José Buxó, Plaintiff and Appellee, *v.* The Aetna Casualty & Surety Co., Defendant and Appellant.

No. 6180. Argued January 18, 1935.—Decided February 28, 1935.

J. *Valldejuli Rodríguez* for appellant. *González Fagundo & González, Jr.*, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

José Buxó filed suit against the Aetna Casualty & Surety Co., a foreign corporation doing business in Puerto Rico, for

the collection of $2,310. The defendant demurred to and answered the complaint. The case went to trial, both parties presented evidence, and the court entered judgment for the plaintiff. From the opinion rendered by the court in support of the judgment we copy the following:

"Both parties presented documentary and oral evidence. The evidence shows, and the court deems it proved, that at the time of the accident a contract of insurance between the plaintiff and the defendant covering the vehicle mentioned in the complaint was actually in full force. By this contract the defendant undertook to pay all the expenses resulting from any claim against the insured, as well as all costs taxed against him, together with interest in any legal proceeding which might be defended by the company in accordance with the conditions and stipulations of the policy; that the action brought by Pedro García against José Buxó was reported in due course to the defendant, which without justification failed to undertake the defense of the insured in the said action; that if José Buxó undertook the responsibility of his own defense through his attorneys, he did so because of the failure of the defendant to assume the defense; that José Buxó in no way settled the action brought against him by Pedro García, which he defended pursuant to the advice of his attorneys in the manner shown in the record; that he paid the judgment entered against him in full to the plaintiff in said action; and that the defendant has not reimbursed him for the amount so paid.

"The court considers that this is not an action for damages, but an action to enforce an insurance contract between the parties, and therefore the defense of prescription is overruled; the court further considers that the complaint is sufficient to support the action and, therefore, it overrules the defense of lack of facts sufficient to constitute a cause of action; and the court deems that the third special defense to the effect that the plaintiff at no time performed the conditions stipulated in the policy hereinbefore mentioned, has not been proved and, therefore, it overrules both the third and fourth special defenses set up by the defendant.

"As a result it is the opinion of the court that it must enter a judgment ordering the defendant to pay to the plaintiff the sum of two thousand three hundred and ten dollars ($2,310), paid by the plaintiff to satisfy the judgment rendered by this court in Civil Case

No. 11296, entitled *Pedro García* v. *José Buxó Villafañe,* together with all the costs incurred by the plaintiff in the present case.''

Although the essential facts of this case are shown by what we have copied above, for the sake of clarity we will summarize them as follows:

José Buxó, the plaintiff, was the owner of a motor bus used as a public carrier of passengers. He insured himself with the defendant, The Aetna Casualty & Surety Co., against personal damages that might be caused by the said vehicle. On January 17, 1926, while the policy was in force, the bus ran over Pedro García and fractured one of his legs. Pedro García sued Buxó on April 19, 1926, claiming damages amounting to $10,000, and the case was finally decided on November 2, 1927, by a judgment against Buxó which ordered him to pay $2,000 and the costs that were later taxed at $310.

There is no dispute, in our opinion, as to the existence of these facts. The only questions to be considered are whether or not the plaintiff fulfilled the conditions stipulated in the policy, and whether or not he proved that he had satisfied the judgment. Both, as we know, were decided by the district court against the defendant. Did the court act correctly or not? The proper answer to this question will decide this appeal and the litigation.

The following is one of the conditions of the policy:

"C.—In case of accident, immediate notice of the same shall be given to the company or to its authorized agent. Notice by the insured or its representative to any authorized agent of the company within the territorial limits of Puerto Rico, provided the notice contains sufficient details to identify the insured, shall be considered as notice to the company. The failure to give the notice required by this policy within the time therein specified shall not operate to invalidate any claim made by the insured if it shall be shown that it was not reasonably possible to give such notice within the specified time, and that notice was given as soon as it was reasonably possible. The insured shall transmit to the company all complaints, summonses or any other proceedings as soon as he shall have received them, and the company, at its own expense, shall adjust said

claim or shall defend the action. The insured shall at all times co-operate with the company in order to facilitate the settlement of claims and suits, but he shall not voluntarily undertake any responsibility nor shall he incur any expenses or settle any claim, except for his own account, without the written consent of the company. In case of personal injury, the insured may provide such first aid as may be indispensable at the moment of the accident at the expense of the company."

The plaintiff testified at the trial as his own witness, in brief, as follows:

His name is José Buxó Villafañe. He is the plaintiff. He identifies the policy. When he learned of the accident he immediately notified the company of the same. He does not remember having received a letter from them because he attended to everything personally. The letter shown to him by his attorney, he sees for the first time. The attorney insists and he answers; "Yes, you are right. This letter is from the company; yes, I went to see them three times, and later they wrote me this letter. I received nothing else but this letter." The letter is dated April 14, 1926. It was not admitted in evidence but it remained in the record, and in its pertinent parts reads as follows:

"We have been visited today by the doctor and the mayor of that town with reference to the accident involving your bus which occurred a few days ago.—In your interest and that of this office, do not fail to see to it that you bring the injured man to San Juan in order to try to decide the case in accordance with what you indicated on your last visit."

Pedro García, the injured party, brought suit against him. He was summoned, and he sent the papers to the office of the company at San Juan. His brother Santos took them personally. The company answered as follows:

"Today (May 13, 1926) your brother brought us a complaint of Pedro Reyes (sic) against you for damages suffered in an accident which occurred on January 24, 1926. You were served with copy of this complaint on April 19, 1926, that is, twenty four (24) days ago, and the term provided by law for your answer has expired.

It is an express condition of the policy that the insured party send any complaint, summons, or other proceeding to the company as soon as he receives it. This is logical since otherwise it would be impossible to defend any action brought against the insured. In the present case, the complaint has been delivered to us 24 days after you were summoned, that is to say, after the expiration of the term allowed you to answer before the default can be noted. Under the circumstances, naturally, we regret exceedingly that we must decline all responsibility in regard to the said case.''

Then he turned his defense over to Attorney González of Humacao. The court ordered him to pay $2,000 damages "and I did so. And in addition $310 for costs.'' The company has not reimbursed to him what he paid.

At the close of the direct examination of the plaintiff, his attorney introduced in evidence a letter which the company had sent to him on June 14, 1926, and which reads thus:

"Attorney Francisco González Fagundo, Humacao, Puerto Rico. —Dear Sir:—We have before us your letter of the 11th instant in which reference is made of our letter of May 13 to Mr. Buxó regarding a certain complaint filed against the said gentleman by Pedro Reyes (sic).—In your letter you say that your client sent us the documents relating to the said complaint before the expiration of the term to answer the same. If you will examine our letter of May 13, above mentioned, you will see that our reason for refusing to take charge of the defense of this case is precisely that the complaint or summons was brought to this office by a brother of Mr. Buxó on May 13, that is, twenty-four days after the notice, when the term to answer had already expired, and under such circumstances it was not reasonable to expect this company to assume any responsibility when the insured had not fulfilled the requirements of the policy for cases of this character.—It is a condition of the policy that the insured must send the complaint or summons to the company immediately upon receipt of it, and this is logical since, naturally, the company should have immediate notice of these facts in order to have the time and the opportunity to prepare its defense and to draft the answer within the term provided by law.—Undoubtedly you insist in your letter that the papers were sent to us before the expiration of the term to answer because you have been erroneously informed on the point.—We regret being unable to accede to

your wishes, but in view of what we have stated, you will clearly see the reason we have for taking this stand.—Yours truly, (Signed) D. R. Carrión,—President."

On cross-examination the plaintiff testified, in short, as follows:

He does not remember the date on which he was summoned. He notified the company as soon as the summons was served. About two or three days later. "I paid the judgment in United States money." Two thousand dollars. I did not have the money in the bank but I had my savings. In my home. Put away in a wardrobe. I had two thousand dollars and a few cents more." He only paid two thousand dollars. "In various coins, you can imagine that the savings kept in the house are in different kinds of coins. It was from my work. I saved something every day." He does not remember how much or on what date he began to save. He had an account in the Colonial Bank. He had the two thousand dollars in cash. He deposited the trifling (*miasmas*) in the bank and kept the "fat amounts" (*lo gordo*) in the wardrobe. He paid Pedro García. The latter did not give him a receipt. He paid him in his house. No one but García was present.

Upon being cross-examined again as to whether, being alone, he did not demand a receipt, he answered: "Well, I got a receipt; I don't know where it is, it was taken from me, or may be it was destroyed. I do not know who wrote it, the judgment had already been rendered and I paid him."

The plaintiff was later called as a witness for the defendant and, in brief, said that he had not notified the company of the result of the suit. He did not advise it that he was going to pay the judgment. He left the matter of the appeal to his attorney. He did not receive an order of execution. He knew that the court had sentenced him to pay the two thousand dollars.

186

Other witnesses for the plaintiff were his brother, Santos, and his attorney. Their testimony tends to corroborate the statements of the plaintiff as to how he approached the defendant for the purpose of being defended in the action brought against him by García.

An analysis of the evidence fails to show, in our opinion, that the plaintiff properly complied with the stipulations of the policy for the purpose of placing the company, in due time, in the best position for taking charge of the defense of the action for damages.

██ This in itself is sufficient cause for reversing the judgment appealed from, but there is more. The action was brought on the strength of the payment by the plaintiff of the judgment rendered against him in the said action for damages and, after a careful study of the evidence presented on this point, consisting solely of the statement of the plaintiff which we gave in brief, we have reached the conclusion that such evidence is not sufficient.

Aside from the fact that the company was adjudged to reimburse an amount which was not paid, according to the statement of the plaintiff himself, that is, the costs, inasmuch as the general assertion made by the plaintiff in the beginning was later destroyed by others which he made in the sense that he only paid the principal amount, $2,000, we consider it improbable, contrary to human nature and the ordinary course of business among men in these times and in similar cases, that the payment of the judgment could have been made as the defendant said that he made it.

In considering without comment, the testimony given by the plaintiff in his own behalf before the court, the first impression received is that he is not telling the truth. And that impression abides and becomes the only conclusion which may be reached after a conscientious study of what was said in relation to the other circumstances of the case.

Day after day the plaintiff saves two thousand dollars and some cents in different coins. He has nothing else. He

deposits in the bank only trifles *"miasmas."* We do not know what he meant by that, but by comparison with the cash kept in the house, "the fat amount" or $2,000, we may infer that the deposits were very small and thin.

And is it possible to even think that a man in this condition should give up all of his savings to pay a judgment creditor the entire amount of the judgment alone, without the intervention of the attorneys for the parties in the litigation, or of any other person, without a receipt or with a receipt which was valued so little that it was destroyed or lost, before a writ of execution has been issued against him, when he knows the amount of the judgment only by hearsay, when there is a policy which binds a company to pay for him, and without even ascertaining whether or not his attorney had taken an appeal? In our opinion it is not possible.

The dates also play an important part. It should be remembered that the judgment against the plaintiff was rendered on November 22, 1927, and that this suit for reimbursement was not brought until almost three years later.

And the fact that the person to whom the payment was said to have been made, alone, and without a receipt, was not called to testify, is more than significant.

The judgment appealed from must be reversed and another rendered instead in favor of the defendant, with costs.